MURREL *v.* BRIDGES.

5-670 279 S. W. 2d 30

Opinion delivered May 16, 1955.

*Longstreth, Witt & Brooks* and *Arthur G. Frankel,* for appellant.

*Guy B. Reeves,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, Roger L. Murrel, brought suit against appellees, Joe Bridges and George Washington, to recover a balance of $1,281.79 alleged to be due on two separate promissory notes and to foreclose a chattel mortgage given to secure payment of the first note. The chancellor found in appellant's favor for $281.79, which represented the balance due on the first note of $664.89, and directed foreclosure of the chattel mortgage. This appeal is from the action of the

court in sustaining appellee's plea of failure of consideration as to the second promissory note for $1,000 and in dismissing the complaint as to said note.

Appellant is an attorney and had previously represented appellee, George Washington. The evidence indicates that Washington sought the advice and assistance of appellant relative to a feasible plan for the operation by appellees of a night club for Negroes in the city of Little Rock without too much interference from law enforcement officers. Acting on appellant's advice, a "fraternal corporation" known as the "Imperial Order of Animistic Swahili, Big Rock Council" was formed with 17 charter members. On July 22, 1954, appellees entered into a partnership agreement drafted by appellant under which they agreed, "to carry on the business of a catering service, entertainment and social hall, and generally speaking operate a night-club business" under the trade name of "Temple of Swahili." According to appellant the corporation "concessionaired out the consessions, handling of the bar and sale of beer, and so forth," to the partnership. Under the partnership agreement Bridges agreed to donate certain personal property used in the operation of the business and **Washington** was designated, "the active and sole manager of said business." It developed that the equipment used in the operation of the business actually belonged to Bridges' wife but she apparently acquiesced in the donation to the partnership. The partnership agreement further provided that neither party should endorse any note without the written consent of the other, and that appellees should retain appellant as their attorney individually and as a partnership.

On August 6, 1954, George Washington, as "President & General Manager of Temple of Swahili," executed a note payable to appellant for $664.89 and a chattel mortgage on the personal property donated by Bridges as security for the payment of said note. On August 13, 1954, Washington executed another note in the same capacity for $1,000 payable to appellant on demand. Bridges could not read but signed the partnership agree-

ment after his wife read it. Insofar as the record discloses he knew nothing about the execution of the notes and mortgage. Although he was to remain in the background it was shown that he operated the business on certain days and Washington was in charge on week ends. Income of the business was apparently confined primarily to proceeds from the sale of intoxicants by the drink and the operation of dice tables. The business did not prosper and became involved with the state Alcoholic Beverage Control Board. Operations ceased about the time the second note for $1,000 was executed by Washington.

Appellant testified that both notes were executed for legal services and advancements he made to the partnership. Except for the drafting of the partnership agreement, he gave vague and evasive answers concerning the nature of such legal services and the specific amount of any cash advancements to the partnership. Relative to the first note and a $200 payment to him by Bridges on July 22, 1954, appellant stated that same were, "to cover the expenses of the entire operations which were entwined basically in a partnership," and, "as a basic part of a series of legal involvements and relationships." When pressed for an answer as to the specific nature. of the consideration for the $1,000 note he stated it was for "legal services fully rendered as per oral agreement with the parties." He also stated that he spent many evenings and hours with appellees and "helped them in many ways toward management of the club." Washington testified that appellant interceded once before the Alcoholic Beverage Control Board when the business was closed and that appellant told him the $1,000 note was for legal fees. Bridges stated he had no knowledge of the execution of the notes and mortgage.

In holding the second note based upon an illegal consideration and void, the chancellor found that any legal services performed by appellant were in furtherance of the operation of an illegal business under the guise of a lodge. While the testimony was not as fully developed on this issue as it might have been, we have concluded

that such finding is supported by a preponderance of the evidence. It is a well-settled principle that contracts between attorney and client which have for their subject-matter any interference with the due enforcement of the criminal laws are against public policy and, therefore, void. 5 Am. Jur., Attorneys, § 56. It is clear from this record that any services performed by appellant in connection with the note for $1,000 were in furtherance of the operation of an illegal business and to prevent the due enforcement of the laws against gambling and the illegal sale of intoxicants.

The decree is accordingly affirmed.

Chief Justice Seamster not participating.